FRED V. MATTHEWS

*vs.*

WILLIAMS MANUFACTURING COMPANY, and others.

Cumberland.    Opinion December 9, 1903.

*Contracts,* joint and several. *Promise,* express and implied. *"Proportional Share."*

Inadequate instructions and those that withdraw from the consideration of the jury the evidence relating to the principal question between the parties and upon which the jury should pass, afford grounds for a new trial.

In an action of assumpsit on account annexed for professional services and disbursements the plaintiff declared upon a joint promise of three defendants, one of whom only was served with process or appeared. The defense was that the promises were several. After verdict for the plaintiff against the only party who appeared and defended, exceptions were taken by him to the following portion of the charge of the presiding justice:—

"If the contracts which were made with these three defendants were not alike, were not identical, the joint nature of the contract would be destroyed, and it would become a contract of another kind, and the plaintiff would be obliged to pursue his remedy against each one severally. But if these three defendants employed the plaintiff to attend to the several accounts . . . . and to take measures for expunging the claims of preferred creditors or any other procedure connected with the bankruptcy proceedings, for their common benefit, each to pay his share of the expenses . . . . then I instruct you as matter of law that they would be joint contractors. Some question has been raised as to the understanding or meaning or legal effect of the term 'each to pay his share of the expenses'. And yet, if there were no arrangement as to each paying his share of the expenses, the law would imply such payment as between the joint contractors, under the law of contribution."

Counsel for the defendant, at the close of the charge requested the following instructions: "If the plaintiff proves that he made identical terms with the three parties defendant and it appears that the agreement was that the three parties defendant were each to pay one-third only of the plaintiff's bill, or to share it in any other proportion, it was not a joint agreement, and the plaintiff cannot maintain the action." This the court declined to give.

The instruction complained of declares "as matter of law" that the defendants would be joint contractors if the plaintiff's services were "for their common benefit, each to pay his share of the expenses."

The fact that the services were rendered for their common benefit is not conclusive; and the question whether the liability of the defendants is joint or several may still depend upon the express agreement of the parties, or upon their intention as gathered from all the circumstances of the case. The phrase "each to pay his share of the expenses" is therefore equivocal and misleading.

*Held;* that taken in connection with the refusal of the presiding justice to give the requested instruction, it necessarily had the effect to withdraw from the jury all consideration of the evidence tending to show a several contract.

*Also;* that the defendant is entitled to have the jury pass upon the evidence introduced and touching the issue raised by the pleadings in connection with the circumstances and situation of the parties and the nature of the services rendered by the plaintiff, under more explicit instructions respecting the legal effect of a payment by each defendant of "his proportional share" of the plaintiff's charges.

Exceptions by defendant from the Superior Court for Cumberland County.   Sustained.

The case is stated in the opinion.

*Wilford G. Chapman and Fred V. Matthews,* for plaintiff.

*Clarence W. Peabody,* for defendant.

SITTING:   WISWELL, C. J., EMERY, WHITEHOUSE, STROUT, SAVAGE, POWERS, JJ.

WHITEHOUSE, J.   This was an action of assumpsit on an account annexed for professional services and disbursements in the matter of Williams Table & Lumber Company, bankrupts.

The plaintiff declared on a joint promise of the three parties defendant.   The defendant Williams Manufacturing Company pleaded the general issue, and under this plea denied the joint promise and claimed that the plaintiff's remedy was by actions against the three defendants severally.

The Dixon-Paddock Lumber Company and H. Lovell & Sons were beyond the jurisdiction of the court, and no service was made on either of them.   The plaintiff accordingly discontinued as to each of those defendants and continued as to Williams Manufacturing Company alone.

The jury found a verdict for the plaintiff and assessed damages at $530.47.   The case comes to this court on exceptions.

It was not in controversy that the plaintiff rendered certain professional services as an attorney at law in the prosecution of the claims of these three defendants, amounting respectively to $1331, $862, and $3060, against the Williams Table and Lumber Company. It appears that the plaintiff caused proceedings in bankruptcy to be instituted against the company, and an examination of its affairs to be made for the purpose of avoiding certain preferences alleged to have been given by the company. The plaintiff contended at the trial that these services were rendered for the common benefit of all the defendants, and that his employment for that purpose was the result of a joint undertaking on their part, whereby they became jointly bound for each other and each became liable to pay to the plaintiff the whole amount of his account for services thus rendered.

On the other hand, it was contended in behalf of the defense that although the plaintiff's services necessarily inured to the benefit of all the defendants, the employment was by virtue of a several contract with a distinct understanding that each was to pay only his proportional share of the expense, and neither was to become liable for the other.

With respect to this issue there was evidence tending to support the contentions of both parties, and the presiding judge instructed the jury, inter alia, as follows:

"If the contracts which were made with these three defendants were not alike, were not identical, the joint nature of the contract would be destroyed, and it would become a contract of another kind, and the plaintiff would be obliged to pursue his remedy against each one severally. But if these three defendants employed the plaintiff to attend to the several accounts, and to take measures for expunging the claims of preferred creditors or any other procedure connected with the bankruptcy proceedings, for their common benefit, each to pay his share of the expenses,—then I instruct you as matter of law that they would be joint contractors."

"Some question has been raised as to the understanding or meaning or legal effect of the term 'each to pay his share of the expenses.' And yet, if there were no arrangement as to each paying his share of

the expenses, the law would imply such payment as between the joint contractors, under the law of contribution."

At the close of the charge the counsel for the defendant called the judge's attention to that part of it relating to the legal effect of an agreement to share expenses, and requested that the following instruction be given to the jury:

"If the plaintiff proves that he made identical terms with the three parties defendant and it appears that the agreement was that the three parties defendant were each to pay one-third only of the plaintiff's bill, or to 'share it in any other proportion, it was not a joint agreement and the plaintiff cannot maintain this action." This the court declined to give.

To the instruction thus given to the jury by the presiding judge, and to his refusal to give the requested instruction, the defendant presents exceptions.

The principles of law governing joint and several contracts are elementary and familiar, but with respect to oral contracts, it is often a question of some difficulty to determine whether the particular liability is joint or several. It is undoubtedly a general rule that if two or more persons agree to perform a particular act, in the absence of express words creating a several liability, they will be presumed to bind themselves jointly for the performance of the entire duty, and so become sureties for one another for the thing contracted to be done. 2 Chitty on Cont. (11 ed.) 1353. "Words of express joinder are not necessary for this purpose; but, on the other hand, there should be words of severance, in order to produce a several responsibility or a several right."

"Whether the liability is joint or several, or such that it is either joint or several at the election of the other contracting party, depends (the rule above stated being kept in view) upon the terms of the contract, if they are express, and, where they are not express, upon the intention of the parties as gathered from all the circumstances of the case." 1 Parsons on Cont. ch. 11, § 1. It follows that where an implied promise raised by law imposes a liability upon two or more, the liability is joint only. Am. & Eng. Enc. of Law (2nd

ed.) Vol. 7, p. 104; but a contract is never implied by law in place of one which the parties actually make for themselves.

The instruction complained of declares "as a matter of law" that the defendants would be joint contractors if the plaintiff's services were "for their common benefit, each to pay his share of the expenses."

If the services were rendered for the common benefit of all the defendants, and it was the express agreement of the parties that each of the defendants was to pay only his proportional share of the expenses, so that neither would become surety for the other, they would not be joint contractors. But if, as elsewhere stated in the charge, "there was no arrangement as to each paying his share of the expenses, the law would imply such payment as between the joint contractors under the law of contribution," although each of such joint contractors would also be liable to the plaintiff in the first instance to pay the whole amount, with the right to seek contribution from the others. Thus each of the defendants might be liable "to pay his share" either as a joint contractor under the law of contribution, or as a several contractor, under the express agreement of the parties. The fact that the services were rendered for their common benefit is not conclusive, and the question whether the liability of the defendants is joint or several may still depend upon the express agreement of the parties, or upon their intention as gathered from all the circumstances of the case. The phrase "each to pay his share of the expenses" was therefore equivocal and misleading, and the instruction excepted to must be deemed an incomplete and inaccurate statement of the law. Taken in connection with the refusal of the presiding judge to give the requested instruction, it necessarily had the effect to exclude from the minds of the jury all consideration of the evidence tending to show a several contract by which each of the defendants became bound to pay to the plaintiff a proportional share of the expense and no more.

But the plaintiff insists that even if the instruction complained of was not sufficiently explicit as a general statement of the law, the exceptions ought not to be sustained because there was no evidence to warrant the jury in finding an agreement or mutual understanding

for such a several contract between the parties, and the defendant company was therefore not prejudiced by the error.

Mr. Edwards, the former business manager of the defendant Williams Manufacturing Company, first employed the plaintiff, and then appears to have exerted some influence to induce the other defendants to retain the plaintiff for the same purpose. In his testimony as a witness for the plaintiff, he states that he and the plaintiff talked with Mr. Lovell, one of the other defendants, and told him that they "would divide the expenses up together;" and also that they "thought the expense would be less divided up among three parties than it would be for one to go in alone." He further testified that Mr. Lovell agreed that "he would pay his share of it and we would pay our share of it," and repeatedly states in his testimony that Lovell agreed that each was to pay his proportional part, and when asked in that connection if Lovell's account was not nearly twice as large as that of the Williams Manufacturing Company, his answer is "that would be the proportion." Similar testimony is also given by Edwards in regard to his conversation with Mr. Paddock, the other defendant, in which the latter also agreed to retain the plaintiff as his attorney. He further states that he tried to get the plaintiff to say that he would favor the Williams Manufacturing Company as to their share of the expense, because he had secured the retainers for the plaintiff. But he also says "there was to be one bill," that it was a "joint account," and he didn't understand that it would make any difference whether the word "share or proportion was used" or not.

In his deposition, Mr. Paddock states that the plaintiff said "he expected to represent Mr. Lovell as well as the Williams Manufacturing Company, and that by each of us paying our share of his expenses, the expense would be lighter than if each of us hired a separate attorney, and that he was willing to take the claims if the three of us would pay his expenses, for five per cent of the amount he succeeded in collecting."

Mr. Lovell, the other defendant, says in his deposition that the plaintiff told him "that in any case all the expenses would be paid out of the estate, and there would be nothing for him to pay."

It further appears that the plaintiff afterwards wrote a letter to the defendants H. Lovell and Sons requesting a payment of $150 "on account of this case," stating that Mr. Edwards had already advanced him something over $175; and about the same time also addressed a similar letter to the Dixon-Paddock Lumber Company, the other defendant, requesting a payment of $75 on account. It is claimed on the part of the defense, that these demands upon the different defendants for the payment of unequal amounts indicate that at that time the plaintiff considered the agreement a several one and was dividing his charges among the three defendants in unequal proportions.

It may be conceded that this evidence does not conclusively prove the existence of a several liability only on the part of the defendants. It may be susceptible of a construction in harmony with the plaintiff's contention. It is true, also, that the testimony given by Lovell and Paddock in their depositions, tending to show that the plaintiff made different agreements with the several defendants, appears to have been discredited by the jury, for they found in favor of the plaintiff under an instruction that the action could not be maintained unless the agreements with the several defendants were identical. But it is the opinion of the court that the defendant company was entitled to have this evidence considered by the jury, in connection with the circumstances and situation of the parties and the nature of the services rendered by the plaintiff, under more explicit instructions respecting the legal effect of a payment by each defendant of "his proportional share" of the plaintiff's charges.

*Exceptions sustained.*